Filed 8/19/22  P. v. Collins CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079724 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI19002362) |
| BOBBY LEWIS COLLINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, John Peter Vander Feer, Judge.  Affirmed in part; reversed in part with instructions.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel, Warren Williams and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant Bobby Lewis Collins guilty of assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4))[1] and made a true finding that he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). The trial court sentenced Collins to 16 years in prison, which included imposition of the upper term of four years on the assault with force conviction.[2]

On appeal, Collins contends the matter must be remanded pursuant to Senate Bill No. 567, which became effective on January 1, 2022 and creates a presumption for imposition of the middle term when a statute specifies three possible terms.

As we explain, we agree Collins is entitled to resentencing under Senate Bill No. 567. Because on remand a full resentencing is appropriate, we conclude the trial court may consider whether Collins is entitled to relief under other laws, including, as he also contends, under Senate Bill No. 81. As amended, section 1385 specifies factors a trial court must consider when deciding whether to strike an enhancement.[3] In all other respects we affirm the judgment.

---

[1] All further statutory references are to the Penal Code.

[2] Collins's four-year sentence for assault with force was doubled to eight years due to a serious felony prior (§ 1170.12, subd. (c)(1)). The trial court also imposed three years for the great bodily injury enhancement (§ 12022.7, subd. (a)), and an additional five years for the serious felony prior (§ 667, subd. (a)).

[3] We only decide whether Collins is entitled to remand for resentencing including under Senate Bill No. 567 and offer no opinion regarding the possible terms of his sentence under this or any other law. Those are questions best left to the trial court to answer on remand.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Prosecution Evidence*

On August 29, 2019, Collins invited a guest into Teresa W.'s home, where Collins had been residing for about six months. Teresa told her friend and victim Michael W., who was visiting Teresa, that she was uncomfortable having the guest inside her home. Michael testified that when he relayed the message to Collins, Collins became angry, pushed him to the floor, then went outside and started yelling for him to come outside, presumably to fight. In an attempt to avoid Collins, who has a black belt in Jujutsu, Michael went out a side door near the garage. The next thing Michael knew, he was on the ground, bleeding profusely from his nose. Before losing consciousness, Michael saw Collins standing over him.

As a result of the sudden attack by Collins, Michael suffered severe injuries to his nose and left eye, head trauma, facial cuts, bruised ribs, and a chipped tooth. After the attack, Michael took pain medication for more than two months; and at the time of trial, was still experiencing "profound dizziness" and vision problems.

Teresa testified she was in the kitchen when she heard a "smack[ing]" sound. She went outside and saw Collins punching Michael, who was bleeding badly on the floor. Teresa yelled at Collins to stop. Collins pushed Teresa to the floor, and continued beating Michael, who appeared "knocked out." In an attempt to stop the attack, Teresa "threw" herself on top of Michael. Collins then "stomp[ed]" on Michael's leg, leaving a "shoe impression." At the end of the attack, Teresa called her mother who in turn called 911. Teresa told officers that during the attack she thought Collins was trying to "kill" Michael.

Officer Ty Chamberlain arrived on scene and found Michael unconscious, his face bloodied. Officer Chamberlain testified Michael momentarily regained consciousness and said Collins had "fucked" him up.

Officer Chamberlain interviewed Teresa on the night of the attack. She told the officer she saw Michael on the ground and Collins "standing over [Michael] punching him in the face." When Collins ignored Teresa's pleas to stop, she laid on top of Michael to protect him from further blows. Collins pushed Teresa off of Michael and continued punching Michael in the face. Teresa again got on top of Michael and threatened to call the police. This time Collins stopped the attack and left in his truck. Later that evening, officers arrested Collins outside Teresa's home.

### *Defense Evidence*

Collins testified he returned home from work at about 6:30 p.m. on August 29 and soon thereafter saw his friend "Rick." Collins and Rick initially drank beer outside the home. At some point Collins went into the home to tell Michael that, while Michael had been away for the preceding few weeks, he and Teresa had had "sexual relations." Collins wanted Michael to know because he believed Michael and Teresa were still a "couple." According to Collins, Michael became angry, called Collins a "dirty mother fucker" and swung at him.

A short time later, Michael again confronted Collins, this time by the side door near the garage. After Michael "lunged" at him, Collins defended himself by striking Michael three or four times in the nose and face.

Collins admitted that on the night of the incident he told officers he struck Michael "up to a dozen times"; and that, after he finished "deliver[ing] the goods," Michael was unconscious. Collins also admitted he studied martial arts for about 12 years, had earned a black belt in Jujutsu, and knew

4

that a person could be knocked out, or, as Collins testified, put "to sleep," from a single blow to a person's neck.

## DISCUSSION

### I. Senate Bill No. 567

**A.** *Section 1170*

When Collins was sentenced in August 2021, the trial court had broad discretion under former section 245, subdivision (a)(4)[4] to impose a term of two, three, or four years for the assault by force conviction. (See former § 1170, subd. (b) ["When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."].) Consistent with the law at that time, in sentencing Collins to the upper term the trial court relied on the facts of the instant crime and Collins's probation report, which, as discussed *post*, identified a number of factors in aggravation and no factors in mitigation.

While Collins's appeal was pending, the Governor signed Senate Bill No. 567. (Stats. 2021, ch. 731, § 1.3.) Senate Bill No. 567 amended the determinate sentencing law, section 1170, to make the middle term the presumptive sentence for a term of imprisonment. A court now must impose the middle term for any offense that provides for a sentencing triad unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the

---

[4]    Subdivision (a)(4) of section 245 provides: "Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

5

facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1), (2).) However, a court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id.*, subd. (b)(3).)

Collins contends the amendment to section 1170 applies retroactively to him because his conviction is not yet final. He further contends he is entitled to remand for resentencing because, in imposing the upper term, the trial court relied on circumstances in aggravation that were neither proven as required under subdivision (b)(2) of section 1170, nor subject to the subdivision (b)(3) exception that is limited to a defendant's prior convictions.

The People agree, as do we, that the amendments to section 1170 apply retroactively to Collins. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308; *People v. Lopez* (2022) 78 Cal.App.5th 459, 465 (*Lopez*) ["The People properly concede that Senate Bill No. 567's ameliorative amendments to section 1170, subdivision (b) apply retroactively to all cases not yet final as of January 1, 2022."].) However, the People contend that vacating the sentence is unnecessary because the trial court properly relied on certified documents in finding beyond a reasonable doubt that Collins suffered a serious felony

6

prior.[5] The People also contend any sentencing error was harmless because, had the circumstances in aggravation been decided by a jury or the court at a court trial (as required under the new law), it is without question that the jury/court would have found true beyond a reasonable doubt the aggravating circumstances warranting the upper term.

In explaining why it chose the upper term of four years, the trial court stated, "Mr. Collins, the Court has weighed the factors [in] aggravation and the factors of mitigation. [W]hen someone is found guilty of [section] 245(a)(4), sometimes people aren't actually struck. It's an assault. [¶] In this case, the victim in this case was beaten severely[,] very severely to the point where the witness had to throw herself—or felt it necessary to throw herself on top of him to . . . save his life. [¶] So under those circumstances, the factors of aggravation that have been outlined by the probation department

---

[5] The record shows that after the jury returned its guilty verdict, the trial court conducted a court trial on the bifurcated priors based on certified records including from the Department of Corrections and Rehabilitation. (See § 969b [providing in relevant part: "For the purpose of establishing prima facie evidence of the fact that a person being tried for a crime or public offense under the laws of this State has been convicted of an act punishable by imprisonment in a state prison, . . . the records or copies of records of any state penitentiary . . . or federal penitentiary in which such person has been imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence"]; see *People v. Castillo* (1990) 217 Cal.App.3d 1020, 1024, fn. 5 [explaining section 969b is an exception to the hearsay rule].)

The trial court found beyond a reasonable doubt that the "certified [section] 969b packages" established Collins suffered a serious felony prior based on a first-degree burglary conviction in the San Diego County Superior Court (No. SCD159490) on April 24, 2001. It also found under this same standard of proof that Collins was on probation when he committed the instant offense. Although the section 969b packages included records for other felony offenses, the trial court did not make findings with respect to these other offenses.

regarding the base term for [the section] 245(a)(4)" conviction provide the basis for the upper term.

**B.** *Analysis*

In *Lopez*, this court explained the two-step inquiry that applies when evaluating whether it was prejudicial error to sentence a defendant under the prior version of section 1170. (*Lopez, supra*, 78 Cal.App.5th at pp. 465-468.) "[T]he initial relevant question for purposes of determining whether prejudice resulted from failure to apply the new version of the sentencing law is whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term. If the answer to this question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury [or court] in selecting the upper term." (*Lopez,* at p. 467, fn. 11.)[6]

Here, the answer to the first question is *no*. As noted, the trial court expressly relied on the probation report's identification of circumstances in aggravation in sentencing Collins to the upper term. The probation report noted the following circumstances in aggravation: "The crime involved great violence, great bodily harm, other acts disclosing a high degree of cruelty, viciousness and callousness" (Cal. Rules of Court, rule 4.421(a)(1));[7] "The

---

[6] *Lopez* disagreed with *People v. Flores* (2022) 75 Cal.App.5th 495, 500, which concluded that remand was unnecessary in light of Senate Bill No. 567 if " 'a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a *single* aggravating circumstance had it been submitted to the jury.' " (Italics added.) We agree with *Lopez* and will follow its two-step harmless error analysis.

[7] All further rule references are to the California Rules of Court.

defendant has engaged in violent conduct that indicates a serious danger to society" (rule 4.421(b)(1)); "The defendant's prior convictions as an adult are numerous and of increasing seriousness" (*id.*, (b)(2)); "The defendant has served prison terms" (*id.*, (b)(3)); "The defendant was on a grant of [s]ummary probation when the crime was committed" (*id.*, (b)(4)); and "The defendant's prior performance on probation/parole was unsatisfactory" (*id.*, (b)(5)).

On the one hand, some of the circumstances in aggravation were proven beyond a reasonable doubt in compliance with Senate Bill No. 567. These include: (1) the crime "involved great violence" and "great bodily harm," as the jury found true the great bodily injury enhancement (see § 12022.7, subd. (a)) and the facts in support of the assault with force conviction show Collins punched Michael in the face multiple times, rendering Michael unconscious and causing him serious injury; (2) Collins has served a prison term, as the court found true beyond a reasonable doubt in the bifurcated trial (see § 1170, subd. (b)(3)); and (3) Collins was on summary probation when he committed the offense, which the trial court also found true beyond a reasonable doubt.

On the other hand, the trial court *also* relied on circumstances in aggravation that were neither proven beyond a reasonable doubt by a jury/court (see § 1170, subd. (b)(2)); nor stipulated to by Collins (see *ibid.*); nor subject to the certified-records exception to establish a defendant's prior convictions (*id.*, subd. (b)(3)). These circumstances include: (4) Collins is "a serious danger to society"; (5) his prior convictions are "numerous and of increasing seriousness"; and (6) his "prior performance on probation/parole was unsatisfactory."

Because not *all* of the circumstances in aggravation were proven under the requirements of Senate Bill No. 567, we turn to the second step in the

9

*Lopez* analysis, namely "whether we can be assured that the trial court *would have exercised its discretion to impose the upper term* based on" whatever *permissible* aggravating factors it cited, even though it "originally relied on both permissible and impermissible factors in selecting the upper term." (*Lopez, supra*, 78 Cal.App.5th at p. 467.) In this second step, we inquire "whether it is reasonably probable that a more favorable sentence would have otherwise been imposed absent the trial court's improper reliance" on the nonproven, impermissible factors. (*Ibid.*) If we "cannot conclude that the trial court would have selected an upper term sentence based on . . . some constellation of permissible aggravating factors," we must "conclude that remand is required to allow the trial court the opportunity to exercise its discretion to make its sentencing choice in light of the recent amendments to section 1170." (*Id.*, at p. 468.)

We cannot conclude from this record that the trial court would have sentenced Collins to the upper term based on *some* of the properly proven aggravating circumstances. Although the record shows the trial court expressly referenced the fact that Michael was "beaten severely" in imposing the upper term, the trial court also relied on other circumstances in aggravation identified in the probation report that were unproven. (See *Lopez, supra*, 78 Cal.App.5th at p. 468 [concluding remand was necessary because the record did not clearly indicate that the trial court "would have selected an upper term sentence even if only a single aggravating factor or some subset of permissible factors were present"].)

In addition, the trial court made no comments at sentencing that would otherwise explain why it was imposing the upper term (based on permissible factors), such that remand would be an "idle" act. (See, e.g., *People v. Coelho* (2001) 89 Cal.App.4th 861, 889 [remand would be an idle and pointless act

10

where the trial court had twice imposed 10 consecutive sentences and indicated that it would impose them even if some were not mandatory]; see also *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [remand is appropriate unless "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion' "].) Nor did the argument of counsel at sentencing, and the court's statements in response, suggest that any error in sentencing Collins under the former law was harmless beyond a reasonable doubt.

At the sentencing hearing, Collins was represented by a deputy public defender who was specially appearing for another deputy public defender who in turn had replaced Collins's trial attorney, Eric Teti. The trial court inquired of Mr. Teti's whereabouts and was informed Mr. Teti had left the Public Defender's Office and was unavailable. The record shows the trial court first addressed Collins's *Romero*[8] motion to dismiss his serious felony prior (discussed *post*) and the public defender "submit[t]ed on the papers." After denying the *Romero* motion, the court next asked for argument on the term to be imposed for the assault with force conviction and the public defender stated, "We'd ask for the low term, but submit." This was the *entirety* of defense counsel's argument regarding the possible terms the trial court should impose in this case.

We thus conclude the matter must be remanded for resentencing under Senate Bill No. 567.

---

[8] *People v. Romero* (1996) 13 Cal.4th 497, 504.

## II. Senate Bill No. 81

Collins also contends he is entitled to the benefits of Senate Bill No. 81 (Stats. 2021, ch. 721, § 1), which added subdivision (c) to section 1385.[9] Subdivision (c)(1) provides in part, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Subdivision (c)(2) of this statute provides in part, "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove" various "mitigating circumstances. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."

One such circumstance identified in subdivision (c)(2) of section 1385 that is "afford[ed] great weight" is in subparagraph (H), which provides: "The enhancement is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(2)(H).)

As noted, Collins's filed a *Romero* motion to dismiss his serious felony prior based on a first-degree burglary conviction that (at the time of sentencing) was more than 20 years old. The trial court denied that motion based on former section 1385 and its exercise of discretion "in furtherance of justice" (see former § 1385, subd. (a)), without the benefit of Senate Bill No. 81 and its requirement that the court give "great weight" to mitigating circumstances including that an enhancement "is over five years old" (see § 1385, subd. (c)(2)(H)).

---

9    Effective January 1, 2022, section 1385 was amended by Senate Bill No. 81. (Stats. 2021, ch. 721, § 1.) Section 1385 was amended again, effective June 30, 2022, to effect technical changes. (Assem. Bill No. 200; Stats. 2022, ch. 58, § 15.)

Senate Bill No. 81 also added subdivision (c)(7) to section 1385. It provides: "This subdivision shall apply to all sentencings occurring after January 1, 2022." Based on this subdivision, the People argue Senate Bill No. 81 does not retroactively apply to Collins's case and therefore remand is unwarranted.

However, because we have vacated sentence and remanded for a full resentencing based on Senate Bill No. 567, we conclude Senate Bill No. 81—among any other laws—will apply at Collins's resentencing. (See *People v. Sek* (2022) 74 Cal.App.5th 657, 674 [concluding that because any resentencing of the defendant will take place *after* Senate Bill No. 81 became effective, a trial court on remand must follow this new law]; see also *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"]; *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate' "].) We express no view on the sentence Collins is to receive under the new law(s).

**DISPOSITION**

Collins's sentence is vacated and this matter is remanded for a full resentencing.  In all other respects the judgment is affirmed.


HALLER, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.